## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DAKIL N. BLAIR,                     :
    Plaintiff              :
                         :           No. 1:24-cv-00211
    v.                     :
                         :           (Judge Kane)
OFFICER CARL, et al.,               :
    Defendants             :

### MEMORANDUM

Before the Court are pro se Plaintiff's application for leave to proceed in forma pauperis, motion for appointment of counsel, and civil rights complaint in which he raises claims for constitutional violations under 42 U.S.C. § 1983 and Pennsylvania state law based on a correctional officer throwing a Styrofoam food tray at him and hitting him in the face.  For the reasons set forth below, the Court will grant the in forma pauperis application, deny the motion for appointment of counsel, dismiss Plaintiff's Section 1983 claims with prejudice, and decline to exercise supplemental jurisdiction over any state-law claims.

## I.   BACKGROUND

Pro se Plaintiff Dakil N. Blair ("Blair"), a convicted state inmate, commenced this action by filing a civil rights complaint against Defendants Pennsylvania State Correctional Institution Rockview ("SCI Rockview"), Officer Carl, and Superintendent of SCI Rockview Bobbi Jo Salamon ("Salamon") on January 29, 2024.[1]  (Doc. No. 1.)  In the complaint, Blair alleges that

---

[1]  The federal "prisoner mailbox rule" provides that a pro se prisoner's submission is deemed filed "at the time [the prisoner] delivered it to the prison authorities for forwarding to the court clerk."  See Houston v. Lack, 487 U.S. 266, 276 (1988).  Unfortunately, when filing his complaint, Blair did not include a declaration stating when he delivered the complaint to prison authorities for mailing to the Clerk of Court.  Nonetheless, the envelope containing the complaint is postmarked January 29, 2024.  (Doc. No. 1 at 5.)  As such, the Court uses January 29, 2024, as the complaint's filing date, even though the Clerk of Court did not docket it until February 6,

on January 23, 2024, at approximately 5:15 p.m., he placed a Styrofoam supper tray outside of his cell.  (Id. at 2.)  The tray contained "pizza[,] beans[,] salad[,] & pudding."  (Id.)

While placing the tray down, Blair noticed the cell bars being pulled to lock the doors. (Id.)  Blair then saw the bars reopen, so he closed his door.  (Id.)  The next thing Blair knew, Officer Carl picked up the tray from the floor, opened the cell door, and asked, "why do you not listen?"  See (id.).  Officer Carl then "ferociously" threw the tray into Blair's face, hitting him "mainly [in his] right eye."  See (id.).  Afterwards, Officer Carl closed the door and continued to yell, although Blair's "dazed manner prevented [him] from interpratating [sic] what was being said."  See (id.)  When Blair finally came to, he checked the mirror.  See (id.).  "[A]lthough their [sic] was pain and agony in [his] face, [he] did not have a black eye[,] just food on [his] face." (Id.)  He alleges that Officer Carl's acts caused him "humiliation[,] pain and agony throughout [his] face, [and] dizzyness [sic]."  See (id. at 3).

Blair feels like this "is more than a criminal action best handled by the [sic] court of law." See (id.).  As such, he asserts causes of action against Defendants under Section 1983 for violations of his right to be free of cruel and unusual punishment under the Eighth Amendment and his right to due process under the Fifth Amendment.  (Id.)  He also appears to assert a state-law tort claim for assault.  (Id.)  For relief, he seeks monetary damages and to have "the Court . . . order [Officer Carl to] los[e his] badge."  See (id.).

When Blair filed his complaint, he neither remitted the filing fee nor applied for leave to proceed in forma pauperis; as such, an Administrative Order was issued requiring Blair to either remit the fee or file an application for leave to proceed in forma pauperis.  (Doc. No. 3.)  Blair

---

2024.  Cf. Fed. R. App. P. 4(c)(1)(A)(ii) (providing that evidence such as a postmark may establish the date of filing of a notice of appeal by a prisoner).

submitted an application for leave to proceed in forma pauperis ("IFP Application"), along with a motion for appointment of counsel, both of which the Clerk of Court docketed on February 21, 2024.  (Doc. Nos. 4, 5.)  Unfortunately, Blair did not include a certified prisoner trust fund account statement with the IFP Application.  As a result, another Administrative Order was issued requesting the Superintendent of SCI Rockview to submit Blair's account statement to the Clerk of Court.  (Doc. No. 6.)  The Clerk of Court docketed Blair's account statement on March 5, 2024.  (Doc. No. 8.)

## II.   LEGAL STANDARDS

### A.    Applications for Leave to Proceed in Forma Pauperis

Under 28 U.S.C. § 1915(a)(1), the Court may allow a plaintiff to commence a civil case "without prepayment of fees or security therefor," if the plaintiff "submits an affidavit that includes a statement of all assets such prisoner possesses that the person is unable to pay such fees or give security therefor."[2]  See id.  This statute

> "is designed to ensure that indigent litigants have meaningful access to the federal courts."  Neitzke v. Williams, 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).  Specifically, Congress enacted the statute to ensure that administrative court costs and filing fees, both of which must be paid by everyone else who files a lawsuit, would not prevent indigent persons from pursuing meaningful litigation.  [Deutsch v. United States, 67 F.3d 1080, 1084 (3d Cir. 1995)].  Toward this end, § 1915(a) allows a litigant to commence a civil or criminal action in federal court in forma pauperis by filing in good faith an affidavit stating, among other things, that [they are] unable to pay the costs of the lawsuit.  Neitzke, 490 U.S. at 324, 109 S.Ct. 1827.

See Douris, 293 F. App'x at 131–32 (footnote omitted).

---

[2]  While the Court recognizes that Blair is incarcerated, the Court notes that "[t]he reference to prisoners in § 1915(a)(1) appears to be a mistake.  In forma pauperis status is afforded to all indigent persons, not just prisoners."  See Douris v. Middletown Twp., 293 F. App'x 130, 132 n.1 (3d Cir. 2008) (unpublished).

A litigant can show that they are unable to pay the costs of the lawsuit "based on a showing of indigence."  See Deutsch, 67 F.3d at 1084 n.5.  The Third Circuit Court of Appeals has not defined what it means to be indigent; nevertheless, "[a] plaintiff need not 'be absolutely destitute to enjoy the benefit of the statute.'"  See Mauro v. N.J. Supreme Ct. Case No. 56,900, 238 F. App'x 791, 793 (3d Cir. 2007) (unpublished) (quoting Adkins v. E.I. DuPont de Nemours & Co., 335 U.S. 331, 339 (1948)).  Some district courts have explained that all a litigant needs to show is that because of their poverty, they cannot afford to pay for the costs of the litigation and provide themselves with the necessities of life.  See, e.g., Rewolinski v. Morgan, 896 F. Supp. 879, 880 (E.D. Wis. 1995) ("An affidavit demonstrating that the petitioner cannot, because of his poverty, provide himself and any dependents with the necessities of life is sufficient."); Jones v. State, 893 F. Supp. 643, 646 (E.D. Tex. 1995) ("An affidavit to proceed in forma pauperis is sufficient if it states that one cannot, because of poverty, afford to pay for the costs of litigation and still provide for him- or herself and any dependents.").

## B.   The Court's Screening of the Complaint Under 28 U.S.C. §§ 1915A and 1915(e)(2)

Under 28 U.S.C. § 1915A, this Court must "review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity."  See 28 U.S.C. § 1915A(a).  If a complaint fails to state a claim upon which relief may be granted, the Court must dismiss the complaint.  See id. § 1915A(b)(1).  The Court has a similar screening obligation with respect to actions filed by prisoners proceeding in forma pauperis.  See id. § 1915(e)(2)(B)(ii) ("[T]he [C]ourt shall dismiss the case at any time if the [C]ourt determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted . . . .").

In reviewing legal claims under Sections 1915A(b) or 1915(e)(2), the Court applies the standard governing motions to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  See, e.g., Smithson v. Koons, No. 15-cv-01757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017) ("The legal standard for dismissing a complaint for failure to state a claim under § 1915A(b)(1) [and] § 1915(e)(2)(B)(ii) . . . is the same as that for dismissing a complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure."), report and recommendation adopted, 2017 WL 3008559 (M.D. Pa. July 14, 2017); Mitchell v. Dodrill, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010) (explaining that when dismissing a complaint pursuant to Section 1915A, "a court employs the motion to dismiss standard set forth under Federal Rule of Civil Procedure 12(b)(6)").  To avoid dismissal under Rule 12(b)(6), a plaintiff must set out "sufficient factual matter" in the complaint to show that their claims are facially plausible.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  This plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct.  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)).  When evaluating the plausibility of a complaint, the Court accepts as true all factual allegations and all reasonable inferences that can be drawn from those allegations, viewed in the light most favorable to the plaintiff.  See id.; In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010).  However, the Court must not accept legal conclusions as true, and "a formulaic recitation of the elements of a cause of action" will not survive a district court's screening under Sections 1915A and 1915(e)(2).  See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007).

In addition, in the specific context of pro se prisoner litigation, the Court must be mindful that a document filed pro se is "to be liberally construed."  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Higgs v. Att'y Gen., 655 F.3d 333, 339–40 (3d Cir. 2011) (explaining that "when presented with a pro se litigant, we have a special obligation to construe his complaint liberally" (citation and internal quotation marks omitted)).  Therefore, a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers."  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting Estelle, 429 U.S. at 106).  This means the court must "remain flexible, especially 'when dealing with imprisoned pro se litigants . . . .'"  See Vogt v. Wetzel, 8 F.4th 182, 185 (3d Cir. 2021) (quoting Mala v. Crown Bay Marina, Inc., 704 F.3d 239, 244–45 (3d Cir. 2013))).

Additionally, when construing a pro se complaint, the court will "apply the relevant legal principle even when the complaint has failed to name it."  See Mala, 704 F.3d at 244.  However, pro se litigants "'cannot flout procedural rules—they must abide by the same rules that apply to all other litigants.'"  See Vogt, 8 F.4th at 185 (quoting Mala, 704 F.3d at 245).

### C.    Section 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials.  See 42 U.S.C. § 1983.  This statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

See id.  "Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors."  See Pappas v. City of

Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S.

273, 284–85 (2002)).  "To state a claim under § 1983, a plaintiff must allege the violation of a

right secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law."  West v. Atkins, 487

U.S. 42, 48 (1988).

## III.   DISCUSSION

### A.   The IFP Application

After reviewing the IFP Application as well as Blair's certified prison trust fund account

statement, it appears that Blair is unable to pre-pay the costs of this civil rights action.

Therefore, the Court will grant the IFP Application and allow him to proceed in forma pauperis.[3]

### B.   Screening of the Complaint

#### 1.   Section 1983 Claim against SCI Rockview

Although the Court has listed SCI Rockview as a Defendant in this action because it is

included on the caption of the complaint (Doc. No. 1 at 1), it is unclear whether Blair is actually

asserting a claim under Section 1983 against SCI Rockview because he did not list it as a

Defendant in the body of the complaint (id. at 2–4).  Nevertheless, to the extent that Blair has

asserted a claim against SCI Rockview, he has failed to state a plausible claim because SCI

Rockview is entitled to Eleventh Amendment immunity and is not a "person" amenable to suit

under Section 1983.

---

[3]  However, because Blair is a prisoner, he is advised that he will be obligated to pay the filing
fee in installments in accordance with the Prison Litigation Reform Act ("PLRA"), regardless of
the outcome of this action.  See 28 U.S.C. § 1915(b).

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." See U.S. Const. amend. XI. This Amendment

> has been interpreted to render states—and, by extension, state agencies and departments and officials when the state is the real party in interest—generally immune from suit by private parties in federal court.  Indeed, it has been recognized for over two hundred years that a state's immunity from suit in federal court is a fundamental principle of our constitutional structure that preserves, as intended by the Framers, the respect and dignity of the states and protects the ability of the states "to govern in accordance with the will of their citizens."

See Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir. 2002) (quoting Alden v. Maine, 527 U.S. 706, 751 (1999)).  SCI Rockview, as part of the Commonwealth of Pennsylvania Department of Corrections ("DOC"), "shares in the Commonwealth [of Pennsylvania's] Eleventh Amendment immunity."  See Lavia v. Pa. Dep't of Corr., 224 F.3d 190, 195 (3d Cir. 2000); Sollenberger v. United States, No. 22-cv-01602, 2022 WL 10208223, at *2 (M.D. Pa. Oct. 17, 2022) (dismissing pro se plaintiff's Section 1983 claims against SCI Rockview because, inter alia, it was entitled to Eleventh Amendment immunity).

The Court recognizes that "Eleventh Amendment immunity is, however, subject to three primary exceptions: (1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law."  See Pa. Fed'n of Sportsmen's Clubs, 297 F.3d at 323 (citation omitted).  However, none of these exceptions apply in this case.

As for the first exception to Eleventh Amendment immunity, Congress did not intend to abrogate Eleventh Amendment immunity by enacting Section 1983.  See Quern v. Jordan, 440 U.S. 332, 344–45 (1979) (stating that "§ 1983 does not explicitly and by clear language indicate

on its face an intent to sweep away the immunity of the States; nor does it have a history which focuses directly on the question of state liability and which shows that Congress considered and firmly decided to abrogate the Eleventh Amendment immunity of the States").  Concerning the second exception, the Commonwealth of Pennsylvania has not waived its Eleventh Amendment immunity from suit in federal courts.  See 42 Pa. C.S. § 8521(b) ("Nothing contained in this subchapter shall be construed to waive the immunity of the Commonwealth from suit in Federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."); see also Lavia, 224 F.3d at 195 (explaining that Pennsylvania has not waived its Eleventh Amendment immunity).  For the final exception, even though Blair has named Officer Carl and Salamon as individual Defendants, he does not seek declaratory or injunctive relief for an ongoing constitutional violation.  Thus, none of the exceptions to Eleventh Amendment immunity apply here.

Furthermore, even if the Eleventh Amendment did not bar Blair's Section 1983 claims against SCI Rockview, the DOC and its individual state correctional institutions, such as SCI Rockview, "are not 'persons' and thus cannot be sued under 42 U.S.C. § 1983."  See Pettaway v. SCI Albion, 487 F. App'x 766, 768 (3d Cir. 2012) (unpublished); Will v. Mich. Dep't of State Police, 491 U.S. 58, 65–66 (1989) (concluding that an individual may not sue a state agency in federal court under Section 1983 because a state agency is not a "person" under that statute).  Accordingly, Blair cannot maintain his Section 1983 claim against SCI Rockview.

## 2. Section 1983 Official Capacity Claims Against Salamon and Officer Carl

The Court construes the complaint as containing official capacity claims against Salamon and Officer Carl.  Blair may not maintain his Section 1983 claims against these Defendants in their official capacities because they are entitled to Eleventh Amendment immunity from these

claims.  The Eleventh Amendment bars claims against state officials acting in their official capacities because such claims are considered to be claims against the employing government agency.  See Will, 491 U.S. at 71 ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself."); A.W. v. Jersey City Pub. Schs., 341 F.3d 234, 238 (3d Cir. 2003) (explaining that Eleventh Amendment immunity "extends to state agencies as well as state officials sued in their official capacities for monetary damages").[4]  Therefore, the Court will dismiss Blair's Section 1983 claims against Salamon and Officer Carl in their official capacities.

### 3.    Section 1983 Individual Capacity Claims Against Salamon

As with SCI Rockview, it is unclear from the complaint whether Blair is asserting a claim against Salamon because she is listed in the caption of the complaint but not in the body of the complaint.  (Doc. No. 1 at 1–3.)  If Blair is attempting to assert a Section 1983 claim against Salamon, he has failed to state a plausible claim because he includes no factual allegations relating to her in the complaint.  A plaintiff asserting a Section 1983 claim must allege the personal involvement of each defendant in the alleged constitutional violation; in other words, the plaintiff must state how each defendant was involved in the events and occurrences giving rise to the claims in the operative complaint.  See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable.); Iqbal, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is

---

[4]  However, "state officials, sued in their individual capacities, are 'persons' within the meaning of § 1983.  The Eleventh Amendment does not bar such suits, nor are state officers absolutely immune from personal liability under § 1983 solely by virtue of the 'official' nature of their acts."  See Hafer v. Melo, 502 U.S. 21, 31 (1991).

inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant,

through the official's own individual actions, has violated the Constitution").

Additionally, to the extent that Blair is attempting to hold Salamon liable simply because

she is the Superintendent of SCI Rockview, he cannot do so because liability under Section 1983

cannot be predicated on respondeat superior.  See Chavarriaga v. N.J. Dep't of Corr., 806 F.3d

210, 227 (3d Cir. 2015) ("[Plaintiff] cannot predicate liability on her § 1983 claims on a

respondeat superior basis." (citing Rode, 845 F.2d at 1207) (emphasis omitted)); Robinson v.

Delbalso, No. 22-2378, 2022 WL 17248100, at *2 (3d Cir. Nov. 28, 2022) ("We agree with the

District Court that Robinson's second amended complaint did not state a plausible claim for

relief. First, he failed to allege the defendants' personal involvement, and he cannot predicate

liability on his § 1983 claims on a respondeat superior basis." (internal citations omitted)).

Instead, if Blair is seeking to hold Salamon liable for unconstitutional acts by her subordinates,

his allegations must satisfy one of two theories of supervisory liability: First, "[i]ndividual

defendants who are policymakers may be liable under § 1983 if it is shown that such defendants,

with deliberate indifference to the consequences, established and maintained a policy, practice or

custom which directly caused [the] constitutional harm[;]" and second, "a supervisor may be

personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed

others to violate them, or, as the person in charge, had knowledge of and acquiesced in his

subordinates' violations."  See A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr., 372 F.3d 572,

586 (3d Cir. 2004) (citation omitted); Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir.

2014) (explaining requirements for supervisory liability in section 1983 claim and describing

"two general ways in which a supervisor-defendant may be liable for unconstitutional acts

undertaken by subordinates"), rev'd on other grounds sub nom., Taylor v. Barkes, 575 U.S. 822 (2015).

To allege a plausible claim for supervisory liability under the first theory—the policy-and-practice strand of supervisory liability—a plaintiff such as Blair must

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure. Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury.

See Chavarriaga, 806 F.3d at 227 (quoting Brown v. Muhlenberg Twp., 269 F.3d 205, 216 (3d Cir. 2001)).  For the second theory of supervisory liability—participating in, directing others to, or knowledge and acquiescence of constitutional violation—generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation.  See Saisi v. Murray, 822 F. App'x 47, 48 (3d Cir. 2020) (unpublished) ("Saisi asserted that some defendants were in charge of agencies that allowed this to happen, and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of [their] position as the head of the [agency].'" (quoting Evancho v. Fisher, 423 F.3d 347, 354 (3d Cir. 2005))); Zigler v. Warren, No. 21-cv-19474, 2022 WL 903383, at *2 (D.N.J. Mar. 28, 2022) ("In simpler terms, a supervisor is not liable for the unconstitutional conduct of his employees solely because he is a supervisor.").  Additionally, "[a]lthough a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive."  See

Chavarriaga, 806 F.3d at 222 (citing Baker v. Monroe Twp., 50 F.3d 1186, 1194 (3d Cir. 1995);

Rode, 845 F.2d at 1201 n.6).

In this case, Blair's allegations in the complaint do not state a plausible supervisory

liability claim under either of the two theories described above.  He does not include any

allegations relating to a custom, policy, or practice in the complaint.  Furthermore, as he does not

mention Salamon at all in the body of the complaint, he has not alleged that she participated in

violating his rights or had knowledge of and acquiesced in Officer Carl's alleged violations of his

rights.  These pleading failures warrant dismissal of Blair's Section 1983 individual capacity

claims against Salamon.

### 4.    Section 1983 Fifth Amendment Violation Claims

Blair makes a passing reference to a Fifth Amendment due process violation in the

complaint.  (Doc. No. 1 at 3.)  The Fifth Amendment is inapplicable here because Blair does not

allege that any Defendant is a federal official.  See Santos v. Sec'y of D.H.S., 532 F. App'x 29,

33 (3d Cir. 2013) (unpublished) ("[T]he Fifth Amendment applies to actions of the federal

government, not state actions[.]" (citing Citizens for Health v. Leavitt, 428 F.3d 167, 178 n.11

(3d Cir. 2005))).  To the extent Blair meant to assert a Fourteenth Amendment substantive due

process claim, he fails to include any factual allegations to support such a claim.  See Vargas v.

City of Philadelphia, 783 F.3d 962, 973 (3d Cir. 2015) (explaining that plaintiff seeking to

plausibly plead substantive due process claim must allege conduct that "shocks the conscience").

The Fourteenth Amendment's "Due Process Clause contains a substantive component

that bars certain arbitrary, wrongful government actions regardless of the fairness of the

procedures used to implement them."  See Foucha v. Louisiana, 504 U.S. 71, 80 (1992).  To

plead a plausible substantive due process claim, a plaintiff must include sufficient allegations

establishing "that the particular interest at issue is protected by the substantive due process clause, and that the government's deprivation of that protected interest shocks the conscience." See Kane v. Barger, 902 F.3d 185, 192 (3d Cir. 2018) (citations and internal quotation marks omitted); see also County of Sacramento v. Lewis, 523 U.S. 833, 847 (1998) (explaining that plaintiff asserting substantive due process claim must allege conduct that is "arbitrary[] or conscious shocking"). "This standard's stringency reflects maintenance of the proper proportions of constitutional, as opposed to ordinary tort, violations." Blain v. Twp. of Radnor, 167 F. App'x 330, 333 (3d Cir. 2006) (unpublished) (citing Lewis, 523 U.S. at 847 n.8).

Blair's substantive due process claims fail here because of the "more-specific-provision rule," which provides that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." See Betts v. New Castle Youth Dev. Ctr., 621 F.3d 249, 260 (3d Cir. 2010) (quoting United States v. Lanier, 520 U.S. 259, 272 n.7 (1997)).  Because, as discussed below, Blair's claims are covered by a specific constitutional provision, i.e., the Eighth Amendments, he cannot maintain separate substantive due process claims.  Therefore, the Court will also dismiss Blair's substantive due process claims under the Fourteenth Amendment to the extent he is asserting such claims in his complaint.

### 5.    Request for Order Directing that Officer Carl Lose his "Badge"

Among Blair's two requests for relief is a request that the Court order that Officer Carl lose his "badge" (Doc. No. 1 at 3), which the Court has construed as a request to have Officer Carl fired.  This Court lacks the authority to impose injunctive relief in the nature of terminating a defendant's employment.  See Buskirk v. Pa. Bd. of Prob. & Parole, No. 22-cv-01826, 2022

14

WL 4542094, at *1–2 n.4 (E.D. Pa. Sept. 28, 2022) (construing plaintiff's request for the court to terminate the defendants' employment as seeking injunctive relief and holding that the court has no authority to terminate the employment of a state employee); see also Dongarra v. Smith, No. 18-cv-01939, 2020 WL 4934660, at *5 (M.D. Pa. Aug. 24, 2020) (dismissing plaintiff's request to terminate defendant's employment because plaintiff has not "named any defendant who has the power to terminate [defendant] from his job"), aff'd, 27 F.4th 174 (3d Cir. 2022); Pagonis v. Raines, No. 17-cv-00001, 2018 WL 9240919, at *4 (W.D. Tex. Aug. 10, 2018) (explaining that federal courts are not "prison managers" and concluding that injunctive relief in the form of terminating a prison official's employment is unavailable in a Section 1983 action (citing Shaw v. Murphy, 532 U.S. 223, 230 (2001))), report and recommendation adopted, 2018 WL 9240916 (W.D. Tex. Sept. 10, 2018).

### 6.  Section 1983 Eighth Amendment Claim

In his complaint, Blair appears to assert an Eighth Amendment excessive use of force claim against Officer Carl.  (Doc. No. 1 at 2–3.)  "The Eighth Amendment, made applicable to the States through the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments.'"  Glossip v. Gross, 576 U.S. 863, 876 (2015).  "The Supreme Court has interpreted this prohibition . . . to bar prison officials from using excessive force against inmates[.]"  Young v. Martin, 801 F.3d 172, 177 (3d Cir. 2015) (citing Hudson v. McMillian, 503 U.S. 1, 6–7 (1992)).

To demonstrate that a prison official defendant has violated the Eighth Amendment, a plaintiff must establish two (2) elements: a subjective and an objective element.  See Hudson, 503 U.S. at 8.  First, the plaintiff must show that the defendant acted with a "sufficiently culpable

state of mind[,]" see Wilson v. Seiter, 501 U.S. 294, 297 (1991), and second, the plaintiff must

show that the defendant's conduct was objectively "sufficiently serious[.]" See id. at 298.

Where a prison official is alleged to have used excessive force in violation of the Eighth

Amendment, the pertinent inquiry for the subjective element is "whether [the] force was applied

in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause

harm." See Hudson, 503 U.S. at 7; Chavarriaga, 806 F.3d at 231 (explaining that "[w]hen prison

officials maliciously and sadistically use force to cause harm, contemporary standards of decency

always are violated[,]" and "[t]his is true whether or not significant injury is evident").  In

conducting this inquiry, there are several factors that a court must consider in determining

whether a prison official has used excessive force against a prisoner, including:

> (1) "the need for the application of force"; (2) "the relationship between the need
> and the amount of force that was used"; (3) "the extent of injury inflicted"; (4) "the
> extent of the threat to the safety of staff and inmates, as reasonably perceived by
> responsible officials on the basis of the facts known to them"; and (5) "any efforts
> made to temper the severity of a forceful response."

See Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting Whitley v. Albers, 475 U.S. 312,

321 (1986)).

In addition, the pertinent inquiry for the objective element is whether the prison official's

actions were "harmful enough," see Hudson, 503 U.S. at 8, or "sufficiently serious," see Wilson,

501 U.S. at 298.  "[N]ot every malevolent touch by a prison guard gives rise to a federal cause of

action."  Wilkins v. Gaddy, 559 U.S. 34, 37 (2010) (citation omitted).  As a result, "[t]he Eighth

Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from

constitutional recognition de minimis uses of physical force, provided that the use of force is not

of a sort 'repugnant to the conscience of mankind.'"  See Hudson, 503 U.S. at 9–10 (quoting

Whitley, 475 U.S. at 327).  Instead, the Eighth Amendment prohibits the use of force that offends

"contemporary standards of decency[,]" regardless of whether "significant injury is evident[;]" although, the extent of injury may provide "some indication of the amount of force applied" or "whether the use of force could plausibly have been thought necessary in a particular situation." See Wilkins, 559 U.S. at 37 (citation, internal citation, and internal quotation marks omitted).

Here, the entirety of Blair's allegations against Officer Carl involves Officer Carl throwing a Styrofoam tray, with "pizza[,] beans[,] salad[,] & pudding," into Blair's face, hitting him "mainly [in his] right eye." See (Doc. No. 1 at 2). Blair did not sustain a black eye from this incident, although he did experience "pain and agony" in his face, as well as dizziness. See (id. at 2, 3). These allegations are insufficient to show that Officer Carl acted "maliciously and sadistically" to cause Blair harm. The Court heeds the Supreme Court's admonition that not all uses of force amount to a constitutional violation, see Wilkins, 559 U.S. at 37, and not "every malevolent touch by a prison guard gives rise to a federal cause of action." See Hudson, 503 U.S. at 9; see also Graham v. Connor, 490 U.S. 386, 396 (1989) (stating that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" amounts to a constitutional violation (internal citation and quotation marks omitted)). While the Court is by no means condoning the act of throwing a food tray, or food, into anyone's face, much less a corrections officer throwing a food tray at an incarcerated individual and hitting them with it, the singular act described in the complaint simply does not rise to the level of an Eighth Amendment violation as it is not "repugnant to the conscience of mankind."[5] See Hudson, 503 U.S. at 9–10

---

[5] Although Blair does not recall what Officer Carl yelled to him after throwing the food tray, the Court notes that "the use of harassing or degrading language of a prison official, although unprofessional and deplorable, does not rise to constitutional dimensions." See Hamilton v. Watson, No. 24-cv-00014, 2024 WL 1298054, at *6 (W.D. Mich. Mar. 27, 2024) (citing Ivey v. Wilson, 832 F.2d 950, 954–55 (6th Cir. 1987)); Disco v. Roth, No. 17-cv-04132, 2018 WL 3387381, at *5 (E.D. Pa. July 12, 2018) ("Courts have consistently held that false or degrading

(quoting Whitley, 475 U.S. at 327); see, e.g., Fulford v. Kilgo, No. 23-cv-00414, 2023 WL

6196543, at *2 (M.D. Fla. Sep. 22, 2023) (dismissing prisoner plaintiff's Section 1983 claim

relating to corrections officer allegedly directing or permitting another prisoner to throw a food

tray at him after finding that "[p]laintiff allege[d] at most an unkind act, not a use of force that

would be deemed 'repugnant to the conscience of mankind.'" (quoting Hudson, 503 U.S. at 10));

cf. Myers v. Saxton, No. 20-cv-00465, 2021 WL 149062, at *7 (N.D.N.Y. Jan. 15, 2021) ("[I]n

this circuit, courts have routinely concluded that the type of physical assault suffered by plaintiff

in this case (i.e., having a food tray thrown at him) is de minimis for purposes of a retaliation

claim and is not sufficient to satisfy the adverse action element" for a First Amendment

retaliation claim (citing cases)).  Accordingly, the Court will dismiss Blair's Eighth Amendment

claim against Officer Carl.[6]

---

statements of prison officials or other state actors, without more, do not rise to the level of an
Eighth Amendment violation." (citing cases)).

[6] Even if Blair had pleaded a plausible Eighth Amendment excessive force claim against Officer
Carl, there is a significant issue evident on the face of his complaint as to whether Blair fully
exhausted his administrative remedies at SCI Rockview before filing his complaint.  Pursuant to
the PLRA, before a prisoner may bring a civil rights action pursuant to Section 1983, or any
other federal law, they must exhaust all available administrative remedies.  See 42 U.S.C. §
1997e; Ross v. Blake, 578 U.S. 632 (2016).  This "exhaustion requirement applies to all inmate
suits about prison life, whether they involve general circumstances or particular episodes, and
whether they allege excessive force or some other wrong."  See Porter v. Nussle, 534 U.S. 516,
532 (2002).

"[T]here is no question that exhaustion is mandatory under the PLRA and that unexhausted
claims cannot be brought in court."  Jones v. Bock, 549 U.S. 199, 212 (2007); see Pearson v.
Sec'y Dep't of Corr., 775 F.3d 598, 602 (3d Cir. 2015) (exhaustion of prison administrative
remedies is mandatory under the PLRA).  The only exception to the PLRA's exhaustion
requirement is if those administrative remedies are "unavailable."  See Ross, 578 U.S. at 636.
Whether an inmate has exhausted administrative remedies is a question of law that is to be
determined by the court, even if that determination requires resolution of disputed facts.  See
Small v. Camden County, 728 F.3d 265, 271 (3d Cir. 2013).

18

### 7.   State-Law Assault Claims

Blair includes "assault" as one of his legal claims in the complaint.  (Doc. No. 1 at 3.)  It is unclear whether Blair is asserting a state-law tort claim for assault based on Officer Carl yelling at him or throwing the food tray at him and hitting him.  If it is based on the latter, then Blair is confusing an assault under Pennsylvania's criminal law, see, e.g., 18 Pa. C.S. § 2701(a)(1) (defining a simple assault as, inter alia, a person "attempt[ing] to cause or intentionally, knowingly or recklessly caus[ing] bodily injury to another"), with the tort of assault under Pennsylvania's common law, see Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994) ("Assault is an intentional attempt by force to do an injury to the person of another . . .

---

Dismissal of a prisoner's claim is appropriate when they have failed to exhaust their available administrative remedies before bringing a Section 1983 action.  See Oriakhi v. United States, 165 F. App'x 991, 993 (3d Cir. 2006) (unpublished) ("Indeed, there appears to be unanimous circuit court consensus that a prisoner may not fulfill the PLRA's exhaustion requirement by exhausting administrative remedies after the filing of the complaint in federal court." (citing Ahmed v. Dragovich, 297 F.3d 201, 209 & n. 9 (3d Cir. 2002))).  Furthermore, the filing of an amended complaint after an unexhausted claim is presented to the court does not cure the infirmity.  See Ahmed, 297 F.3d at 209 ("Whatever the parameters of 'substantial compliance' referred to there, it does not encompass a second-step appeal five months late nor the filing of a suit before administrative exhaustion, however late, has been completed. It follows that Ahmed cannot cure the defect in his action by the proffered amendment of the complaint.").

A plaintiff is not required to allege that they have exhausted administrative remedies.  See Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002).  Nevertheless, sua sponte dismissal is appropriate where "the basis [of the plaintiff's failure to exhaust [their] administrative remedies] is apparent from the face of the complaint."  See id. at 297. Additionally, the Court takes judicial notice of the DOC's three-tiered inmate grievance procedure as set forth in DC-ADM 804.2.  See Spruill v. Gillis, 372 F.3d 218, 232 (3d Cir. 2004).

Here, the exhaustion issue apparent on the face of Blair's complaint is that he alleges that the food-tray throwing incident occurred on January 23, 2024, and he signed his complaint on the same date.  (Doc. No. 1 at 2, 4.)  Although the envelope containing the complaint is postmarked January 29, 2024 (id. at 5), it seems highly unlikely that Blair invoked the DOC's grievance procedure and fully exhausted his grievance prior to filing his complaint.  Therefore, unless Blair could show that the grievance process was "unavailable" to him, it seems very probable that the Court would have to ultimately dismiss his complaint for failure to exhaust under the PLRA.

." (quoting Cohen v. Lit Bros., 70 A.2d 419, 421 (Pa. Super. Ct. 1950))), and would instead be asserting a tort of battery under Pennsylvania's common law, see id. ("[A] battery is committed whenever the violence menaced in an assault is actually done, though in ever so small a degree, upon the person." (quoting Cohen, 70 A.2d at 421)).  Nevertheless, whether pursuing the tort of assault, battery, or both, the ultimate result is the same.

To the extent that Blair is attempting to assert state-law assault and battery claims, the Court declines to exercise supplemental jurisdiction over the claims because the Court has dismissed his federal claims.  See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if-- . . . (3) the district court has dismissed all claims over which it has original jurisdiction . . . .").

As the Supreme Court instructs:

Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.  Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.  Similarly, if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals.

United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726–27 (1966).  Here, the Court finds no basis to retain supplemental jurisdiction over any remaining state-law claims.

The Court also notes that there does not appear to be an independent basis for subject-matter jurisdiction over Blair's state-law claims under the diversity jurisdiction statute, 28 U.S.C. § 1332, which grants a district court subject-matter jurisdiction over a case in which "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States."  See 28 U.S.C. § 1332(a)(1).  Section 1332(a) requires "'complete diversity between all plaintiffs and all defendants,' even though only minimal

diversity is constitutionally required. This means that, unless there is some other basis for

jurisdiction, 'no plaintiff [may] be a citizen of the same state as any defendant.'" See Lincoln

Ben. Life Co. v. AEI Life, LLC, 800 F.3d 99, 104 (3d Cir. 2015) (quoting Lincoln Prop. Co. v.

Roche, 546 U.S. 81, 89 (2005) and Zambelli Fireworks Mfg. Co. v. Wood, 592 F.3d 412, 419 (3d

Cir. 2010) (internal footnotes omitted)).

For purposes of determining whether parties are completely diverse, an individual is a

citizen of the state where the individual is domiciled, meaning the state where the individual is

physically present and intends to remain.  See Washington v. Hovensa LLC, 652 F.3d 340, 344

(3d Cir. 2011) ("[D]omicile is established by an objective physical presence in the state or

territory coupled with a subjective intention to remain there indefinitely." (citation omitted)). In

this case, Blair alleges only that he is incarcerated in Pennsylvania and the individual Defendants

work at, or are located at, SCI Rockview in Pennsylvania.[7]  (Doc. No. 1 at 1, 2.)  Therefore, at

least based on the allegations in the complaint, the Court cannot conclude that the parties are

completely diverse for purposes of Section 1332(a).

Even if the Court had diversity jurisdiction over Blair's state-law claims or decided to

retain supplemental jurisdiction over them, the Court would dismiss the claims.  The torts of

assault and battery are intentional torts under Pennsylvania law.  See Renk, 641 A.2d at 293

(defining torts of assault and battery under Pennsylvania law as intentional torts (quoting Cohen,

---

[7]  Although Blair is currently incarcerated at SCI Rockview, his domicile "before his
imprisonment presumptively remains his domicile during his imprisonment.  That presumption,
however, may be rebutted by showing a bona fide intent to remain in the state of incarceration on
release."  See Pierro v. Kugel, 386 F. App'x 308, 309 (3d Cir. 2010) (unpublished) (citations
omitted); see also Robinson v. Temple Univ. Health Servs., 506 F. App'x 112, 115 (3d Cir. 2012)
(unpublished) (explaining that "[t]he traditional view is that a prisoner remains a citizen of the
state of which he was a citizen before his imprisonment," and that other circuits "follow a
rebuttable presumption model; those courts presume that a prisoner does not change his domicile
by being incarcerated in a new state, but they permit him to rebut that presumption").

70 A.2d at 421)).  As such, sovereign immunity would bar any intentional tort claims against Officer Carl.  See 1 Pa. C.S. § 2310 ("Pursuant to section 11 of Article 1 of the Constitution of Pennsylvania, it is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity.").  The Commonwealth of Pennsylvania has not waived its sovereign immunity from intentional torts.  See Wicker v. Shannon, No. 09-cv-01629, 2010 WL 3812351, at *9 (M.D. Pa. Sept. 21, 2010) ("The Pennsylvania legislature has not chosen to waive this immunity for intentional torts." (citing La Frankie v. Miklich, 618 A.2d 1145, 1149 (Pa. Commw. Ct. 1992))); see also 42 Pa. C.S. § 8522 (setting forth limited exceptions to governmental immunity).  Therefore, Blair's assault and/or battery claims under Pennsylvania law against Officer Carl would be dismissed pursuant to Pennsylvania's sovereign immunity.

### C.     Leave to Amend

Having determined that Blair's claims against Defendants are subject to dismissal, the question turns to whether to grant him leave to file an amended complaint.  Courts should generally give leave to amend but may dismiss a complaint with prejudice where leave to amend would be inequitable or futile.  See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment— irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); see also Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) ("When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that [they have] leave to

amend within a set period of time, unless amendment would be inequitable or futile.").  "In determining whether [amendment] would be futile, the district court applies the same standard of legal sufficiency as [it] applies under Fed. R. Civ. P. 12(b)(6)."  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997).

Based on the analysis above, the Court finds that providing Blair with leave to file an amended complaint is futile.  He cannot assert a plausible Section 1983 claim against SCI Rockview, against Officer Carl and Salamon in their official capacities, and against Officer Carl and Salamon for violations of the Due Process Clauses of the Fifth or Fourteenth Amendments. In addition, considering that Officer Carl's throwing of the food tray and hitting Blair with it does not rise to the level of an Eighth Amendment violation, and Blair has not included any factual allegations that Salamon was personally involved in the incident with Officer Carl, the Court cannot conceive of any allegations Blair could allege to establish a viable Section 1983 supervisory liability claim against Salamon.  Moreover, with the dismissal of Blair's federal claims, the Court would decline jurisdiction over his state-law claims, and there is no statutory basis for original jurisdiction over the claims.  And even if the Court retained or had jurisdiction over Blair's state-law claims, Officer Carl and Salamon are immune from the claims because of Pennsylvania's sovereign immunity.  Therefore, the Court will not provide Blair with leave to amend and will instead dismiss the complaint with prejudice as to his federal claims and without prejudice as to his state-law claims should Blair desire to refile them in an appropriate Pennsylvania state court.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant the IFP Application and dismiss the complaint with prejudice as to Blair's Section 1983 claims and without prejudice as to any state-

law tort claims.  The Court will also deny Blair's motion for appointment of counsel.[8]  An appropriate Order follows.

s/ Yvette Kane
Yvette Kane, District Judge
United States District Court
Middle District of Pennsylvania

---

[8] Indigent civil litigants have no constitutional or statutory right to the appointment of counsel; however, district courts have broad discretionary power to request appointed counsel for such litigants pursuant to 28 U.S.C. § 1915(e)(1).  See Montgomery v. Pinchak, 294 F.3d 492, 498 (3d Cir. 2002) (citations omitted).  This Court follows a two-step process when deciding whether to request appointed counsel to represent an indigent civil litigant.  See Houser v. Folino, 927 F.3d 693, 697 (3d Cir. 2019).  First, as a threshold inquiry, the Court must consider whether the plaintiff's case has some arguable merit in fact and law.  See Montgomery, 294 F.3d at 498–99 (citations omitted).  Here, Blair's motion does not pass the threshold inquiry because his case does not have arguable merit in fact and law.